[Civ. No. 19924.   Second Dist., Div. Three.   May 26, 1954.]

FREDERICK S. BEVERLEY, Appellant, v. EUGENE W. BISCAILUZ, Respondent.

Jesse A. Hamilton for Appellant.

Harold W. Kennedy, County Counsel, and William E. Lamoreaux, Deputy County Counsel, for Respondent.

WOOD (Parker), J.—Defendant, as sheriff, sold certain real property under a writ of execution to a judgment creditor for the amount of the judgment, interest, and costs.   That amount was more than the amount stated in a writ of attachment that had been levied, in the same action, upon the property.   Plaintiff had acquired the property after the attachment had been levied and before the execution sale.   The present action is to recover from the sheriff the amount which was in excess of the amount stated in the writ of attachment (plus interest thereon at 10 per cent per month and 25 per cent thereof as damages, under Gov. Code, § 26680).   Judgment was for defendant.   Plaintiff appeals.

The record on appeal consists of the judgment roll and a stipulation hereinafter referred to.

Appellant states in his brief that the matter was submitted for judgment upon a "Stipulation of Facts" and "certain oral stipulations which were embodied in the" findings of fact and conclusions of law. He also states that "he has no quarrel with the Trial Court in so far as the facts it found are concerned," but he does complain about the legal conclusions of the trial court.

The court made findings as follows:

On July 27, 1948, the defendant, as sheriff of Los Angeles County, levied a writ of attachment in the amount of $5,408.86, upon real property in Los Angeles County owned by E. Hagan, which writ was issued by the Superior Court of Alameda County in an action wherein the Carnation Company was plaintiff, and E. Hagan was a defendant.

On August 19, 1948, Hagan conveyed the property, subject to said attachment, by grant deed to one Streff, and on that date Streff executed a purchase money mortgage in favor of Hagan for $75,000; the deed was recorded August 20, 1948, and the mortgage was recorded August 23, 1948.

On September 23, 1948, Hagan assigned said mortgage, subject to said attachment, to plaintiff Beverley herein; the assignment was recorded on said day; on September 10, 1949, plaintiff acquired said property by grant deed from Streff and since that date plaintiff has been the owner of the property.

On April 10, 1949, the Carnation Company amended its complaint by increasing the amount of its demand from $5,408.86 to $6,216.55; on April 12, 1949, the Carnation Company obtained judgment against Hagan for $7,449.29, including costs.

On September 30, 1949, the defendant herein, as sheriff, caused the writ of execution, which had been issued in the Alameda County case in the sum of $7,658.28, to be levied upon the interest of Hagan in said real property.

On November 7, 1949, pursuant to the writ of execution, the defendant herein, as sheriff, sold the property "to the Carnation Company, the judgment creditor, for the total sum of $7,830.24, which said sum consisted of the following:

The judgment as entered................$7,449.29
Accrued interest to September 12, 1949.... 208.99
Accrued interest to date of sale........... 84.38
Costs of sale........................... 87.58."

On November 7, 1949, the sheriff's certificate of sale was executed and delivered to the Carnation Company; the certificate was recorded on December 12, 1949; on November 28, 1950, the sheriff caused his deed to said property to be executed and delivered to said company.

On November 7, 1949, the defendant, a sheriff, made his return "showing that said property was sold on November 27, 1949, for the sum of $7,830.24. That it is true that the only money which came into the hands of defendant upon the sale of said property under execution was the sum of $87.58, costs of sale, and that said sum was paid to the defendant by the Carnation Company."

On October 2, 1950, plaintiff made demand on defendant, for payment to plaintiff of the difference between the amount named in the sheriff's certificate of sale and the amount named in said attachment, plus interest and penalties; said difference is $2,421.38.

"It is not true that defendant received the sum of $2,421.38, or any other sum, from the said Carnation Company to and for the use and benefit of the plaintiff."

The court made conclusions of law as follows: The writs of attachment and execution were levied in the manner required by law; the execution sale was conducted in the manner required by law; defendant was not required to collect any sum from the judgment creditor, except the costs of sale; and defendant is not liable to plaintiff in any sum.

The stipulation, above referred to as a part of the record on appeal, was that on September 10, 1949, plaintiff herein acquired title in fee simple to said real property by grant deed from Streff, which deed was intended to be a deed in lieu of foreclosure of the mortgage.

Appellant (plaintiff) contends that the Carnation Company had an attachment lien for only $5,408.86, the amount stated in the writ of attachment; that he acquired the real property subject only to that attachment lien of $5,408.86; and that since the sheriff sold the property for $7,830.24, or $2,421.38 in excess of that lien, the sheriff held the amount of said excess for the use and benefit of plaintiff. Appellant argues that the attachment lien was not increased by merely amending the complaint and seeking a larger recovery; the sheriff is bound by his return of sale showing that he sold the property for $7,830.24; he cannot make a defense inconsistent therewith to the effect that he did not sell for cash

but merely accepted the bid of the judgment creditor which was the total amount of the judgment, interest, and costs, and he credited that amount in satisfaction of the judgment. In Freemen on Executions, 3d edition, volume 3, page 2390, and in *Harvey* v. *Foster*, 64 Cal. 296, page 298 [30 P. 849], it was said that such an officer cannot make a defense inconsistent with his return. If it be assumed that a sheriff is bound by his return, it is necessary of course to know the contents of his return in order to know to what extent he is bound. In the present case, the return which the sheriff made is not in the record on appeal, and the record does not show what statements were in the return. It is true that one of the findings was that the sheriff made his return showing that the property was sold for $7,830.24. It is to be noted, however, that immediately following that finding (and in the same paragraph) there is a finding that "the only money which came into the hands" of the sheriff upon the sale was $87.58, costs of sale, paid to him by the Carnation Company. It is also to be noted that there is a finding (in a preceding paragraph) that the sheriff sold the property "to the Carnation Company, the judgment creditor, for the total sum of $7830.24, which said sum consisted of the following: The judgment as entered $7449.29 Accrued interest to September 12, 1949 208.99 Accrued interest to date of sale 84.38 Costs of sale $87.58." Also, there is a finding that the sheriff did not receive $2,421.38, or any sum, from the Carnation Company for use and benefit of plaintiff. It cannot be determined from the findings what statements were in the return. The first of the findings just referred to (that the sheriff made his return "showing" that the property was sold for $7,830.24) does not expressly recite whether the return stated that the property was sold for $7,830.24 cash or whether it was sold for $7,830.24 which was applied in satisfaction of the judgment. Since the return shows that the property was sold for $7,830.24, and since that amount was the exact amount of the judgment, interests, and costs, and since the property was sold to the judgment creditor, it is obvious that the property was not sold for cash, but the amount bid by the creditor was applied in satisfaction of the judgment. Therefore it would seem that the return by which the sheriff was allegedly bound was a return to the effect that he did not receive cash upon the sale and that the said amount stated therein was applied in satisfaction of the judgment. Such a sale to a judgment creditor is not necessarily equivalent to a sale for cash. There is no evidence

here as to Hagan's financial ability, or as to the value of the land, or as to whether there were liens upon the land prior to the attachment lien. It might well be that the judgment against Hagan was practically of no value, and that the land was practically of no value, or that if the land was valuable that it had prior liens upon it to the extent that Hagan had no substantial interest therein. Under such circumstances, the judgment creditor might be willing to satisfy his judgment by bidding the full amount of it for Hagan's practically valueless interest in the land. The purchase money mortgage for $75,000, which Streff placed on the land when the land was conveyed to him by Hagan, might indicate that the land was valuable, but, as above stated, there was no evidence as to whether there were prior liens on the land other than this creditor's attachment lien. The fact that the plaintiff herein did not redeem the land (for the amount of the judgment) after the execution sale, or offer to redeem it for $5,408.86 which he considered to be the amount of the attachment lien, signifies that he did not regard his alleged $75,000 equity in the land as being of much value. It seems that his position was that if he could obtain from the sheriff $2,421.38 and 10 per cent interest thereon and 25 per cent thereof as damages, he would consider that amount as adequate to satisfy his alleged equity in the land.

Assuming that the attachment lien herein was for $5,408.86 only, and assuming that the sheriff was chargeable with having received cash in excess of the amount of that lien, it would not necessarily follow that the sheriff would be required to pay any part of such excess to this plaintiff (Beverley). Other liens or encumbrances might have been placed upon the land after the attachment herein was levied and before plaintiff Beverley acquired the mortgage or land. The stipulation of facts, upon which the case was submitted to the trial court, is not in the record on appeal—the appeal herein being upon the judgment roll and a stipulation, above set forth, to the effect that plaintiff became the owner of the property on September 10, 1949. There is no finding herein that plaintiff's mortgage was not subject to other liens or encumbrances. There is no evidence that the grant deed from Streff to plaintiff (which was intended to be in lieu of foreclosure of the mortgage) was recorded. There is no evidence that, at the time of the execution sale, the sheriff knew, actually or constructively, that plaintiff owned or claimed to own the property. At that time under the evidence here, Streff, who was not

the judgment debtor, was the record owner of the property, and plaintiff was owner of the mortgage.

No question is presented here as to the sufficiency of the evidence to support the findings. As above shown, it is conceded that the findings are correct. As to the issue whether the sheriff received money for the use and benefit of plaintiff, the court found that he did not receive "$2421.38, or any other sum," for the use and benefit of plaintiff.

The findings support the judgment.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied June 11, 1954, and the petition of McCray, assignee of appellant, for a hearing by the Supreme Court was denied July 21, 1954.